IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SASAKIA DAVIS, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) Case No.: 3:18-cv-00766-WC |
| ROSIE L. WRIGHT and PROGRESSIVE | ) |
| DIRECT INSURANCE COMPANY, | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (DOC #11)**

Comes now Plaintiff Sasakia Davis, and responds to Defendant's Motion for Partial Summary Judgement (Doc.#11) as follows:

**STATEMENT OF UNDISPUTED FACTS**

1. Plaintiff adopts the facts, but not the argument, stated in Defendant's Statement of Undisputed Facts.

2. On November 28, 2016, Rosie Wright ran into the back of Plaintiff's car while Plaintiff was stopped at a traffic signal. There is no evidence that Plaintiff did anything wrong to cause or contribute to this accident. It is undisputed that Rosie Wright is one-hundred percent at fault for this accident.

3. It is undisputed that immediately following the accident Plaintiff sought medical treatment for her neck and lower back. Dr. Plas T. James, M.D. of the Atlanta Spine Institute, P.C. performed a C4-C6 anterior cervical discectomy and fusion less than three months after this accident on February 22, 2017 at St. Joseph's Hospital of Atlanta.

4. After giving Plaintiff an opportunity to heal from her cervical surgery and continuing to

1

treat Plaintiff for on-going low back pain following her November 28, 2016 accident, Dr. James performed an L5-S1 anterior lumber interbody fusion at St. James Hospital of Atlanta.

5. The total medical costs billed for Plaintiff's treatment of the injuries she suffered in this rear-end collision exceed $300,000. The total lien held by Plaintiff's health insurer, Optum, exceeds $126,000.

6. Plaintiff's underinsured motorist coverage with Defendant Progressive only has an available policy limit of $100,000.

7. Safeway Insurance Company provided Defendant Rosie Wright's liability insurance. Safeway offered its limits of $25,000 to Plaintiff by letter dated December 1, 2017, a copy of which is attached as Plaintiff's Exhibit 1. Plaintiff's counsel forwarded the policy limits offer to Defendant Progressive on December 4, 2017.

8. On January 15, 2018, Plaintiff's counsel demanded Progressive waive its subrogation right, allow Plaintiff to accept the policy limits offer and that Progressive pay its policy limits as well.

9. On January 16, 2018, Progressive waived its right to subrogation against Defendant Wright and agreed to allow Plaintiff to accept the policy limits offer of $25,000. (A copy of that letter is attached as Plaintiff's Exhibit 2) On January 19, 2018, Progressive offered to settle Plaintiff's UIM claim for $2500 and stated it had more investigation to do concerning Plaintiff's medical treatment. To date Progressive has refused to pay its policy limits even though fifteen months have passed since it waived its subrogation rights. In that time, Progressive has not taken a single medical deposition.

**SUMMARY JUDGMENT STANDARD**

10. Plaintiff adopts the Defendant's statement of the summary judgment standard.

11. In addition, Plaintiff would add that the Court must believe the evidence presented by the Plaintiff as the non-moving party and draw all inferences from that evidence in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ARGUMENT – THE EVIDENCE PROVES PLAINTIFF'S CLAIM FOR BAD FAITH IS RIPE FOR ADJUDICATION

12. Defendant Progressive correctly relies on the Alabama Supreme Court's decision in *Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So.2d 557 (2005) as setting out the current law in Alabama concerning the elements of a bad faith UIM claim. Based on the law quoted from this decision, Defendant argues that Plaintiff's claim for bad faith failure to pay stated against Progressive is not ripe for adjudication because liability has not been determined. However, Defendant left out of its quotes the most important language pertaining to the facts of this case:

> Consequently, in the context of uninsured motorist coverage, the Supreme Court of Alabama has consistently held, '[T]here can be no breach of an uninsured motorist contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover.' LeFevre, 590 So.2d at 158 (quoting Quick, 429 So.2d at 1035). **Thus, in LeFevre the Court instructed that a delay in payment of UIM benefits does not constitute bad faith if there is a bona fide dispute concerning either liability or damages**. Id. at 161.

*Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So.2d 557, 561 (2005)(*emphasis added*)

13. The law in Alabama does not require an adjudication on the merits for liability to be "fixed". Rather, the law requires that no bona fide dispute exists as to either liability or damages. *Pontius*, *supra*. at 561. Rosie Wright ran her car into the back of Plaintiff's car

3

while Plaintiff was stopped at a traffic light. Ms. Wright's insurer offered its policy limits and paid them after Progressive waived its right to subrogation. There is no dispute, much less a bona fide dispute, about liability in this case; it is fixed.

14. In its brief to this Court, Defendant did not cite any evidence that Plaintiff had any pre-existing neck or low back problems. There is no evidence that Plaintiff had any intention of having neck or back surgery prior to the accident with Ms. Wright. The medical bills for Plaintiff's treatment directly resulting from this accident exceed $300,000, and the medical lien exceeds $126,000. Progressive's UIM policy limits available to pay damages in this case are only $100,000.

15. Progressive has had substantial time to investigate this rear-end collision and the medicals ensuing therefrom. Yet, Progressive did not point to one single fact in dispute that prevents it from living up to its contractual obligation with Plaintiff. It only argues that the case is not ripe because liability is not fixed. It also says it is investigating the damages, but never says what it is about the damages that needs to be investigated. Plaintiff had two major spine surgeries following this accident, the first one coming only three months after. The billed medicals from that surgery alone surpass the available policy limits and Progressive has had more than 15 months to investigate this clear liability case.

## **CONCLUSION**

Defendant Progressive Direct's Motion for Partial Summary Judgment is due to be denied. Liability in this case is fixed as there is no bona fide dispute as to liability and Plaintiff's substantial damages have been established and Progressive has had a substantial amount of time to perform any investigation it might have needed to complete to determine the merits of

Plaintiff's claims.

Respectfully submitted this the 1st day of May, 2019.

>*/s/ Brian Mosholder*
>BRIAN MOSHOLDER (MOS018)
>ROBERT P. VARNER, JR. (VAR018)
>Attorneys for Sasakia Davis

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF Filing System which sends information of such filing to counsel of record in this cause.

Murry S. Whitt (WHI113)
Alex L. Holtsford, Jr. (HOL048)
Holtsford Gilliland Higgins Hitson & Howard, P.C.
P.O. Box 4128
Montgomery, AL 36103-4128
Phone:       334-215-8585
Fax:         334-215-7101
mwhitt@hglawpc.com
aholtsford@hglawpc.com

>*/s/ Brian Mosholder*
>BRIAN MOSHOLDER (MOS018)
>Attorney for Sasakia Davis